IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TERESA A. GAY,**

    Plaintiff,

vs.                                      Civ. No. 97-1541 LCS

**AMERICAN NATIONAL INSURANCE COMPANY, a foreign corporation, et al.,**

    Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS MATTER came before the Court for a non-jury trial on February 2-3, 1999. The Court, having heard all of the witnesses' testimony, reviewed all of the evidence, and considered all of the arguments of counsel, finds and concludes as follows:

**Findings of Fact**

( Finding Nos. 1-20 are taken from the stipulations in the Pretrial Order.)

1. At all material Times, Defendant American National Insurance Company ("American National") had more than 500 employees on a company-wide basis.

2. Plaintiff Teresa Gay ("Gay") began her employment with American National as a sales agent with the Home Service Division in 1987.

3. American National is in the business of selling life, health and accident insurance throughout the country. Its home office is located in Galveston, Texas. Its Home Service Division is engaged primarily in the sale of life insurance. For administrative reasons, the Home Service Division has divided the country into geographical regions; each region is comprised of a number of

geographical districts. Each district is supervised by a district manager who is located in a district office in a town or city within the district. A district may be comprised of two or more towns or cities. Districts are divided into geographical territories called "debits." Sales Agents are assigned to debits and are expected to go door to door on their assigned debits soliciting new customers and collecting premiums from existing customers.

This case involves events that took place in American National's Clovis, New Mexico district. The Clovis district encompassed many cities surrounding Clovis, including Portales, where Gay's debit was located. The Clovis district is part of the Rocky Mountain Region which is comprised of New Mexico, Arizona, Colorado, Utah and a small part of Texas.

4. Sales agents, like Gay, are supervised by a sales manager (also commonly referred to as a "staff manager".) Each sales manager usually supervises about six or seven agents. Each district (including each sales agent and sales manager in that district) is supervised by a district manager. In this case, the district manager was located in Clovis, New Mexico, and he reported to the regional director who was located in Albuquerque. The regional director, in turn, reported to officers in the Home Service Division in the home office in Galveston, Texas. The regional director's usual contact with respect to sales managers is with Dixie McDaniel, a vice president (formerly an assistant vice president) in American National's Home Service Division.

5. During the events at issue in this case, Mike Marinich was regional director for the Rocky Mountain Region, and Dixie McDaniel was an assistant vice president of the Home Service Division to whom he reported with respect to sales managers. The district manager in Clovis at the time of the promotion decision in September, 1993 was Bill Wilhite.

6. Gay's claim of gender discrimination is based on the fact that she was not promoted.

7. Gay worked for American National from November, 1987 until she voluntarily resigned (the first time) in August of 1991. Gay's resignation in August, 1991 was voluntary.

8. Gay complains of two promotions which she did not receive. The agents promoted on those two occasions were Walter Sutch and Pete Cerda.

9. Walter Sutch was promoted in approximately February of 1991.

10. Gay's resignation from American National in August, 1991 was not based on the fact that Walter Sutch was promoted instead of her, but was based on alleged inappropriate conduct by Mr. Sutch.

11. Although Plaintiff voluntarily resigned from American National in August, 1991, she returned to work for the company in approximately October, 1991. When she returned to American National, Gay signed an agreement stating that her status with the company would be that of a new employee without any continuous service benefits.

12. In the two-year period from October, 1991 (when Plaintiff returned to American National after her first resignation) through October 1993, only one agent was promoted to sales manager in the Clovis district. The promotion in question involved a vacant sales manager position that came open when Bill Wilhite was promoted from sales manager to district manager after the previous district manager (Raymond Adkins) retired. As the new district manager, Bill Wilhite was responsible for recommending an agent to fill his old sales manager job. As a general rule, American National attempts to fill vacant sales manager jobs with an agent already working in the district. Wilhite ultimately recommended that Pete Cerda be given the promotion to sales manager, and Wilhite's recommendation was approved by the regional director, Mike Marinich, and Dixie McDaniel, an assistant vice-president of the Home Service Division.

13. In her Equal Employment Opportunity Comission ("EEOC") charge, Gay stated that the date of discrimination (both "earliest" and "latest") was September 23, 1993, which referred to the date Pete Cerda was promoted to sales manager. Gay did not check the box on her EEOC charge for "continuing action." Gay's EEOC charge was filed on or about October 8, 1993. Plaintiff agreed that the statements in her EEOC charge were accurate, that she reviewed the charge before signing it, and that the EEOC assisted her in filling out the charge.

14. Although Gay thought she was better qualified, she admitted that Pete Cerda also was qualified for the promotion in question.

15. Gay acknowledged that her production numbers at the time of the promotion decision in September, 1993 were lower than Pete Cerda's.

16. There are a number of objective indicators of an agent's production at American National, including amount of sales, policy lapses, and persistency of policies. The primary indicator of an agent's production is known as "M.D.O. (Monthly debit ordinary) gross increase" which is the amount of premium sold by an agent, less the amount of existing premiums that have lapsed over a period of time. American National's home office prepares computer-generated progress bulletins, which list each agent's production to date, and lists agents in descending order based on M.D.O. gross increase.

17. At the end of September, 1993, Pete Cerda was the leading agent in the Clovis district. His sales for the first nine months of 1993 (M.D.O. premium issue) were $1,962.46, almost $700 more than any other agent in the entire district. Mr. Cerda's gross increase was $848.35, which was $100 more than any other agent in the entire district, and over $600 more than the average for the entire district.

18. At the end of September, 1993, Gay was ranked twelfth out of nineteen agents with regard to M.D.O. gross increase, and eleventh out of nineteen agents with regard to sales (M.D.O. premium issue). Gay's M.D.O. gross increase was approximately $150 less than the average reflected by all nineteen agents in Clovis.

19. When the promotion decision was made near the end of September, 1993, Pete Cerda had issued premiums in the amount of $1962.46 as compared to Gay's premium issue of $856.22. At the same point in time, Cerda's gross increase was $848.35, as compared to Gay's $51.70.

20. Gay is not claiming that she was a better producer than Mr. Cerda in the years prior to 1993.

(Finding Nos. 21 and 22 were stipulations made during trial.)

21. An appropriate foundation exists for admitting the EEOC right to sue letter and charge, even in the absence of Richard Norris' testimony.

22. Sales agents are not given written criteria for promotion to sales manager, and they are also not given information on how to apply for promotion.

(Finding Nos. 23 - 35 were made based on the evidence produced at trial.)

23. Raymond Adkins and Bud Stewart were involved in the decision to hire Gay in 1987.

24. Prior to her first resignation in 1991, Gay made no complaints to American National about gender-based comments, discriminatory promotions, or the alleged conduct of Walter Sutch.

25. At the end of 1987, Gay ranked 12th out of 19 agents. At the end of 1988, Gay ranked 18th out of 21 agents. At the end of 1989, Gay ranked 13th out of 21 agents. At the end of 1990, Gay ranked 8th out of 20 agents. When Gay resigned in 1991, she ranked 18th out of 20 agents.

26. Raymond Adkins, Lester Parrish and Mike Marinich were involved in the decision to re-hire Gay in October, 1991.

27. When Gay became employed with American National a second time, she did so as a new employee without any continuous service benefits.

28. Gay resigned her employment with American National, the second time, in October, 1993, because she was not promoted when she felt she should have been.

29. Bill Wilhite, Mike Marinich, and Dixie McDaniel were the American National representatives involved the decision to promote Pete Cerda in 1993.

30. An agent's recent production history is the threshold and primary factor in a promotion decision.

31. In order to be qualified for promotion to sales manager, an agent must have a recent production history objectively equal to, or better than, the average for the agents the agent would be supervising if promoted.

32. Because her recent production history was not equal to or better than the average for the agents she would be supervising were she promoted, Gay was not qualified to be promoted in September, 1993.

33. In deciding that Gay was not qualified to be considered for promotion in September of 1993, Wilhite relied exclusively on production figures which showed that Gay's production for 1993 was not equal to, or better than, the average for the agents that Gay would have been supervising had she been promoted. (The Court relied on its observation of the witnesses' demeanor in resolving the question of the credibility of Gay's and Wilhite's contradictory testimony on what was said during their September 1993 meeting.)

34. In deciding that Pete Cerda was qualified to be considered for promotion in 1993, Wilhite relied exclusively on production figures which showed that Cerda's production for 1993 was

better than the average for the agents Cerda would have been supervising had he been promoted.

35. Based upon the evidence adduced at trial and the demeanor of the witnesses, the Court finds no credible evidence that Defendant's failure to promote Plaintiff was based in part on an impermissible motive (i.e., gender).

## Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Venue of this case in this district is proper.

3. The law governing this case is contained in Title VII of the Civil Rights Act of 1964, as amended, and the case law construing Title VII.

4. The promotion of Walter Sutch in early 1991 is outside the relevant 300 day period, and cannot be a basis for recovery by Gay.

5. To establish a *prima- facie* case of gender discrimination under Title VII Gay must establish that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was rejected; and (4) the position was filled by someone who was not a member of the protected class.

6. Gay cannot make out a *prima-facie* case of gender discrimination under Title VII, because she was not qualified for the 1993 promotion.

7. Because Gay cannot make out a *prima-facie* case of employment discrimination, she cannot establish that she was constructively discharged. *See James v. Sears Roebuck,* 21 F.3d 989, 992 (10th Cir. 1994).

8. Even if Gay could establish a *prima-facie* case, American National has presented a legitimate, non-discriminatory reason for not promoting her, i.e., that Pete Cerda's 1993 production history was more impressive than her's.

9. Because Wilhite relied exclusively on objective production statistics, Gay has not established that American National's reason for not promoting her was a pretext for gender discrimination..

10. Although the issue was not listed in the Pretrial Order, as allowed under Fed.R.Civ.P. 15 (b) the parties tried by implied consent whether American National's promoting Pete Cerda instead of Gay in 1993 was based on a mixture of permissible motive (i.e., that she was not qualified) and impermissible motive, (i.e., that she was a woman). *See* 42 U.S.C. Sec. 2000e-2(m); *see generally, Medlock v. OrthoBiotech Inc.,* __F.3d__, 1999 WL 2474 (10th Cir. Jan. 5, 1999).

11. Based upon all of the evidence adduced at trial, Gay has failed to establish that her sex was a motivating factor in Wilhite's decision not to recommend that she be promoted, nor was it a factor in her failing to be promoted.

_____
Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE